IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**SHAWN ALAN MORRIS**                                                                 **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 1:21-CV-51-DAS**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**OF THE SOCIAL SECURITY ADMINISTRATION**                  **DEFENDANT**

## FINAL JUDGMENT

Plaintiff Shawn Alan Morris filed a Complaint for Judicial Review of Social Security Decision of the unfavorable decision of the Commissioner of Social Security regarding an application for a period of disability and disability insurance benefits. Docket 1. The parties have consented to entry of final judgment by the United States Magistrate Judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Docket 18. The Court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument, finds that the Commissioner's decision should be remanded.

## FACTS

The plaintiff filed for benefits on June 20, 2020, alleging onset of disability commencing on September 18, 2018. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision on October 1, 2020. The Appeals Council denied the request for review, and this timely appeal followed.

The ALJ determined the claimant had the following severe impairments: gout, chronic obstructive pulmonary disease, obesity, and adjustment disorder with depressed mood. The ALJ found he retained the residual functional capacity (RFC) to perform sedentary work with the

following limitation: he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; he can occasionally stoop, crouch, kneel, crawl, and balance; he must avoid even moderate exposure to respiratory irritants such as dust, fumes, gases, and odors; he can understand, remember, and carry out simple verbal instructions and can perform simple routine repetitive tasks; he can sustain concentration, attention, and persistence on tasks for two-hour periods in an eight-hour workday; he can interact as necessary with supervisors, co-workers, and the general public; he can adapt to simple changes in the work environment.

While the plaintiff cannot perform any of his past relevant work, the ALJ found, based on the testimony of the Vocational Expert (VE), that there were other jobs in the national economy that would fit within his RFC. For example, the ALJ found he can work as a lens inserter, cuff folder, and assembler. These three jobs represent 280,000, 450,000, and 245,000 jobs respectively in the national economy.

## ANALYSIS

The plaintiff claims the ALJ erred when she failed to consider the medical evidence contained in exhibits 8F, 9F, 11F, and 14F.[1] The ALJ did not substantively discuss these exhibits but deemed them "neither valuable nor persuasive" because they were assessed after the date last

---

[1] The contents of these exhibits can be summarized as follows:
- Exhibit B8F shows that on August 19, 2019, eight months after the plaintiff's date last insured, Dr. Ozborn signed a disability parking application that stated the plaintiff was severely limited in his ability to walk (Tr. 381).
- Exhibit B9F is an "Updated Medical Opinion" from Dr. Ozborn dated September 5, 2019, nine months after the plaintiff's date last insured. The opinion contains greater functional limitations than those assessed in the March 8, 2018 medical source statement, which is also included in Exhibit B9F (Tr. 382-86).
- Exhibit B11F is another medical source statement from Dr. Ozborn, this one dated July 19, 2020, more than one year and a half after the plaintiff's date last insured. This opinion claims the plaintiff has significant functional limitations, mostly consistent with the limitations identified in Exhibit B9F (Tr. 450-54).
- Exhibit B14F is a document from Dr. Ozborn dated September 10, 2020, almost two years after the plaintiff's date last insured, that states that the plaintiff's respiratory impairments would not be resolved if he stopped smoking (Tr. 509).

insured.[2] The plaintiff contends the records and opinions in these exhibits relate back to December 31, 2018, the date last insured and are "necessary to show the ongoing impairments that cause the ongoing functional limitations assessed by Dr. Ozborn."

The plaintiff argues that under *Davidson v. Colvin*, 164 F. Supp. 3d 926 (N.D. Tex. 2015), the ALJ committed reversible error when she failed to consider these records. In *Davidson*,[3] the court held "medical opinions may not be ignored just because they predate the disability onset date." *Davidson v. Colvin*, 164 F. Supp. 3d 926, 941–42 (N.D. Tex. 2015) (agreeing with the conclusions from other circuit courts—the 1st, 6th, 7th, 8th, and 10th— that "an ALJ may not simply ignore medical opinions because they pre-date the onset of disability or post-date the last insured date, since that evidence can be relevant to a claim of disability.").

In the Fifth Circuit, it is well-established that "non[-]contemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant." *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) (citing *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir. 1984)). "Subsequent medical evidence is relevant ... because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Id.* (quoting *Basinger*, 725 F.2d at 1169).

The Commissioner responds that the exhibits do not relate back in time but "only purport to provide Plaintiff's current functional capabilities." Docket 23 at 5 (citing *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985)). *Owens* establishes that a plaintiff must show the existence

---

[2] As noted in fn. 1, Exhibit B9F contains medical source statements pre- *and* post-dating the relevant period. The ALJ did not consider records and/or opinions pre-dating the alleged onset date of September 7, 2018, under the doctrine of *res judicata* because they were from a period previously adjudicated.
[3] The issue in *Davidson* concerned the medical opinion of a treating physician, but the court reasoned, in review of 20 C.F.R. § 404.1527(c)(2), that an "ALJ is required to consider *all medical opinions* in the record" and that the "regulations do not provide any exception to that requirement for opinions that pre-date a claimant's onset date." *Id.* at 941 (emphasis in original).

of a disability prior to the expiration of his insured status; however, under *Davidson*, the ALJ must consider medical opinions pre-dating the alleged onset of disability and post-dating the last insured date to determine their relevance to the plaintiff's disability claim. Failure to consider the medical opinions contained in these records was error.

 Having determined that the ALJ was required to consider the medical opinions that pre-date the alleged onset date and post-date the plaintiff's date last insured, the court must still determine whether this error was harmless. *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir.1988). The Fifth Circuit has held that the harmless error doctrine applies in Social Security disability cases. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[H]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Davidson*, 164 F. Supp. 3d at 944 (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003))).

 Dr. Ozborn's March 8, 2018 and September 5, 2019 opinions bookend the relevant period, both falling within nine months thereof. The September 5, 2019 opinion contains additional functional limitations which, if adopted, would have rendered the plaintiff disabled. Dr. Ozborn stated the plaintiff's impairments were likely to produce "good days" and "bad days" causing him to be absent from work "more than four days per month." (Tr. 384). During the hearing before the ALJ, the VE testified that, with the plaintiff's RFC, there would be no jobs available for an individual who would be absent from work two days a month. (Tr. 59). Because consideration of this evidence could have resulted in a different result, the plaintiff's substantial

rights were affected by the ALJ's failure to consider evidence pre- and post-dating the relevant period.

Because the court is remanding for additional proceedings at step four, it is not necessary to consider the alleged error at step 5. However, should the ALJ find the plaintiff can perform the representative jobs of lens inserter, cuff folder, and assembler, some clarification is warranted.

Based on the VE's testimony, the ALJ found the plaintiff could perform the representative jobs of lens inserter, cuff folder, and assembler. These jobs are all classified as unskilled and sedentary and have reasoning levels of one[4] and two.[5] The plaintiff contends there is a conflict between the language development levels[6] for these jobs, his education level, and the RFC limiting him to understanding, remembering, and carrying out simple *verbal* instructions.

The plaintiff testified at the ALJ hearing that he has a sixth-grade education and was unable to pass the seventh grade (Tr. 37). The Disability Report Form provides the plaintiff completed the 7th grade in 1989 (Tr. 201). The ALJ determined the plaintiff had a limited education, defined by the regulations as "a 7th grade through the 11th grade level of formal education." 20 C.F.R. § 404.1564(b)(3). A "marginal education" is "6th grade level or less." 20 C.F.R. § 404.1564(b)(2). When presenting hypotheticals to the VE, the ALJ assumed "a younger

---

[4] A Reasoning Level of one is defined as a worker being able to "Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* U.S. Department of Labor, Employment and Training Administration, Stock No. 029-013 00095-1, The Revised Handbook for Analyzing Jobs (1991) ("Handbook") found at https://skilltran.com/index.php/support-area/documentation/1991rhaj, p. 7-3 and 20 C.F.R. § 404.1568(a).
[5] A Reasoning Level of two is defined as a worker being able to "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*.
[6] The language development level for jobs with a Reasoning Level of one requires:
    Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
The language development level for jobs with a Reasoning Level of two requires:
    Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

person, *who with a limited education, he had prior marginal education*, I think it's sixth grade, and the same work history…" (Tr. 57) (emphasis supplied). Based thereon, the VE proceeded to identify jobs with reasoning levels of one and two.

The record provides conflicting information as to whether the plaintiff's education level is limited or marginal, and the hypothetical presented to the VE also conflicts without explanation. Therefore, on remand the ALJ is instructed to clarify whether the plaintiff's education level is limited or marginal. To the extent necessary, the ALJ should further elicit VE testimony on the compatibility of any jobs identified with the ability to understand, remember, and carry out simple *verbal* instructions.

Accordingly, the Commissioner's decision is reversed and remanded for a rehearing of the plaintiff's application under the fourth sentence of § 405(g).

**SO ORDERED**, this the 4th day of August, 2022.

/s/ David A. Sanders
**UNITED STATES MAGISTRATE JUDGE**